Jacqueline K. SCHROERING,
Appellant,

v.

Hon. Charles HICKMAN, Judge, Anderson Circuit Court; Hon. Rebecca Overstreet, Special Judge, Anderson Circuit Court, Appellees.

No. 2005–CA–002511–MR.

Court of Appeals of Kentucky.

Feb. 23, 2007.

As Modified April 20, 2007.

Discretionary Review Denied by Supreme Aug. 15, 2007.

Philip C. Kimball, Louisville, KY, for appellant.

No Brief for appellees.

Before DIXON, Judge; EMBERTON and PAISLEY, Senior Judges.[1]

DIXON, Judge.

This case presents a novel issue of a direct contempt proceeding before the Anderson Circuit Court. Appellant, Jacqueline Schroering, was found to be in contempt of court and summarily remanded to the county jail. Thereafter, a second judge sentenced Schroering on the same

---

1. Senior Judges Thomas D. Emberton and Lewis G. Paisley sitting as Special Judges by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

contempt charge to a fine in the amount of $250. Schroering appeals her conviction as violative of her Constitutional right to due process under the Fourteenth Amendment and her Constitutional right against double jeopardy under the Fifth Amendment. Finding error, we reverse the circuit court's decision in part.

On October 4, 2005, Schroering represented a defendant in a criminal proceeding before Judge Charles Hickman in the Anderson Circuit Court. During the course of the hearing, Schroering twice told Judge Hickman that he had called her a liar. Immediately, Judge Hickman instructed the bailiff to take Schroering into custody, but to return her to the courtroom later that day. Once Schroering was returned to the courtroom the court resumed Schroering's client's proceedings without further incident. Judge Hickman however, made the unusual determination to hold a separate "hearing" on the contempt charge against Schroering at a later date. It was agreed that another judge—Rebecca Overstreet—would preside over this "hearing."

Before any hearing could be held however, Judge Hickman entered a written order entitled "Finding of Summary Imposition of Contempt," holding Schroering guilty of contempt and setting a sentencing date before Judge Overstreet. At this sentencing hearing Judge Overstreet, while allowing Schroering an opportunity to dispute Judge Hickman's finding of contempt, determined her only role was to sentence Schroering on the contempt. After hearing Schroering's explanation of the events on October 4, 2005, Judge Overstreet sentenced her to a $250 fine. Subsequently, this appeal ensued.

On appeal, Schroering essentially makes two Constitutional arguments. First, she argues that her due process rights were violated because she was not permitted to be heard before she was found in contempt by Judge Hickman. Second, Schroering argues that by jailing her and fining her at separate times, she was twice in jeopardy for the same offense in violation of both the U.S. Constitution and the Kentucky Constitution. We find that Schroering's Constitutional rights were indeed violated in both respects, and reverse.

## CONTEMPT AND DUE PROCESS

■ Before addressing the Constitutional issues, some discussion of the nature of contempt is beneficial. The power of the court to punish for contempt is inherent. *Newsome v. Commonwealth*, 35 S.W.3d 836, 839 (Ky.App.2001); *Arnett v. Meade*, 462 S.W.2d 940, 947 (Ky.1971); *Underhill v. Murphy*, 117 Ky. 640, 78 S.W. 482, 484 (1904). Contempt has been defined in Kentucky as "the willful disobedience of-or open disrespect for-the rules or orders of a court." *Commonwealth v. Bailey*, 970 S.W.2d 818, 820 (Ky.App.1998) (citing *Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky.1996)).

■ Contempt may be either criminal or civil. Criminal contempt is conduct which amounts to obstruction of justice, and which tends to bring the court into disrepute. *Id.* at 808. Civil contempt consists of failure of one to do something under order of the court, generally for the benefit of a party. *Id.* at 808; *Campbell v. Schroering*, 763 S.W.2d 145, 148 (Ky.App. 1988). The difference between the two is in the court's purpose in imposing its sentence. If the purpose is to punish, the sanction is for criminal contempt. *Burge* at 808. Obviously, here, Judge Hickman meant to punish Schroering for her courtroom behavior making this case one of criminal contempt.

■ Next, once it has been determined that the contempt is criminal in

nature, the type must be examined. Criminal contempt can be either direct or indirect. Direct contempt is a type that occurs in the presence of the court and is seen as an affront to the dignity of the court. *In re Terry*, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888). Indirect contempt is committed out of the court's presence. *Burge*, 947 S.W.2d at 808. Clearly, this case involves direct contempt. The finding of contempt was based on Schroering's actions occurring in the presence of the court. This type of contempt may be punished summarily by the court, and requires no fact-finding function since all the elements of the offense are matters within the personal knowledge of the judge. *In re Terry, supra.* There is no issue of due process in this type of proceeding as the court would be well within its power to summarily sanction Schroering for her courtroom behavior. And, had Judge Hickman's finding of contempt and sanction ended here, no issue of due process would arise. Unfortunately, the court apparently believed either, that it initially had made no determination of contempt or, subsequently, that it had made no determination of sanction. In either case, due process principles apply.

As previously indicated, the court had full authority to summarily sanction Schroering, which it in fact did by remanding her into custody and jailing her for a period of time. The idea behind this summary proceeding is that an emergency of sorts exists and needs to be dealt with immediately in order to maintain control of the courtroom. Consequently, due process considerations take a back seat to the court's urgent need to deal with any "affront to its dignity." However, when sanctions are delayed, the compelling need for summary proceedings disappears, as does the argument for the need to forego due process requirements.

This case is somewhat similar to the Kentucky case of *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974). In *Taylor*, a trial judge summarily punished an attorney for direct contempt for actions committed during trial without giving the attorney an opportunity to be heard in defense or mitigation. The Supreme Court held that because no sentence was imposed during the trial at the time of the alleged offenses and there appeared to be no final adjudication of contempt until after the verdict was rendered, the summary contempt determination violated the attorney's right to due process. *Id.* at 497, 94 S.Ct. at 2702. In so concluding, the Court stated,

> This procedure does not square with the Due Process Clause of the Fourteenth Amendment. We are not concerned here with the trial judge's power, for the purpose of maintaining order in the courtroom, to punish summarily and without notice or hearing contemptuous conduct committed in his presence and observed by him. *Ex parte Terry*, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888). The usual justification of necessity, *see Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954), is not nearly so cogent when final adjudication and sentence are postponed until after trial.

*Taylor* at 497–498, 94 S.Ct. at 2707–2703.

Here, the court seems initially uncertain as to whether adjudication has occurred by setting the matter for "hearing" before another judge. Then, before any hearing can be held, the court issued a written order finding Schroering in contempt and setting the matter for "sentencing" before another judge. While the court's reasoning for its change in procedure is somewhat unclear, what is clear is that under *Taylor*, once the court continued the matter for further proceedings, Schroering's

due process rights were violated when she was not allowed to be heard. This is especially true when the sentencing judge is not the fact-finder. If the trial court had merely summarily sentenced Schroering to jail as punishment, which it clearly could do, the matter should have been resolved. However, once the trial court continued the proceedings, the emergency issue created in the courtroom no longer existed and Schroering was entitled to exercise her due process rights, especially before a judge who had not been present at the time of Schroering's alleged contempt. The court's refusal to allow her to do so constituted reversible error.

## DOUBLE JEOPARDY

Schroering next argues that she was placed in double jeopardy by the sanctions imposed upon her for contempt. She claims that because she was jailed immediately upon being found in contempt, the subsequent punishment of a $250 fine amounts to two punishments for the same contempt in violation of the Fifth Amendment to the United States Constitution.

■ In *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the Supreme Court recognized that the protections against double jeopardy extend to nonsummary criminal contempt prosecutions. *Id.* at 696, 2856. Likewise, the Kentucky Supreme Court has also recognized this principle in *Commonwealth v. Burge, supra,* at 812. However, the double jeopardy protections have never been extended to direct contempt proceedings as acknowledged by Schroering. Generally, there is only one proceeding in direct summary contempt determinations. Here, however, we have in essence two sentencings—one summary and one delayed—arising out of the same facts. In reality, delaying the sentence transforms this case into a nonsummary proceeding. Thus, it is

our conclusion that Schroering's rights against double jeopardy did attach to this proceeding.

■ Having concluded that double jeopardy principles do apply to this case, we must now examine whether the $250 fine constitutes a second sanction offending the Constitutional prohibition. Under the double jeopardy clause of the Fifth Amendment to the United States Constitution no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Section 13 of the Kentucky Constitution is virtually identical.

■ Where, as here, multiple punishment occurs, courts have consistently concluded that the offenses for which the offender is being punished must have different elements or double jeopardy applies. *See, United States v. Dixon, supra* at 696, 113 S.Ct. at 2856; *Brown v. Ohio,* 432 U.S. 161, 168–169, 97 S.Ct. 2221, 2226–2227, 53 L.Ed.2d 187 (1977); *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Obviously, here all of the facts and elements are the same. No argument has been made that Schroering's jailing did not constitute punishment. She was then fined several weeks later for exactly the same offense. Consequently, Schroering was doubly punished in violation of the Fifth Amendment to the United States Constitution and Section 13 of the Kentucky Constitution.

## CONCLUSION

Having found reversible error, Schroering seeks reversal of her contempt conviction. We decline to do so. We reiterate that Judge Hickman had full authority to hold Schroering in direct contempt, and send her summarily to jail. What was impermissible was the second punishment of a fine for the same offense. Having

found that the imposition of such a fine constituted a violation of Schroering's protection against double jeopardy and having reversed on that issue, it is unnecessary to remand this case for further proceedings. The judgment of the Anderson Circuit Court is hereby reversed to the extent of its imposition of a $250 fine. The judgment of contempt is hereby affirmed.

ALL CONCUR.